UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JUSTUS REALTY, LLC,

                        Plaintiff,

      -against-

KFC OF AMERICA, INC., YUM! BRANDS,
INC. (formerly known as TRICON GLOBAL
RESTAURANTS, INC.) and
KFC U.S. PROPERTIES, INC.,

                        Defendants.
-----------------------------------------------------------x

Case No._____

**COMPLAINT**
Jury Trial Demanded

Plaintiff, by its attorney, LAWRENCE B. GOLDBERG, ESQ., as and for its Complaint, respectfully shows to the Court and alleges:

### Introduction and Brief Preliminary Statement

1.    Plaintiff, at all times relevant herein, was the owner of real property located at 3203 Peartree Avenue, Bronx, New York (in the Baychester section of the Bronx, New York City and in the Co-Op City neighborhood and located directly opposite or in front of the entrance to the Co-Op City buildings). Co-Op City is the single largest cooperative development in the United States, with over 15,000 residential units. Plaintiff's real Property is zoned for commercial use (and had, as is explained herein below, a commercial structure upon it at one time. The plaintiff's real Property (and Co-Op City) is located in New York City Bronx Community Board 12, where only 4% of the total "land use" of that geographic area is for "commercial and office use" (as of the year 2000). Over one-half of the land use is devoted to residential use. (Statistics from Bronx Community Board 12, found at www.bronxmall.com/commboards/demographics12.html.) Plaintiff's Property is one of only a very small percentage of real Property in this geographic area of the Bronx for use for commercial purposes.

2. In December, 2000, plaintiff entered into a lease with defendant KFC of America, Inc. under which KFC of America, Inc. agreed to improve and develop plaintiff's real Property (which included the removal of an existing commercial structure) by constructing a free standing restaurant ("Kentucky Fried Chicken" or "KFC") and where KFC of America, Inc. agreed to pay monthly rents to plaintiff. Under the lease, KFC of America, Inc. paid some of the monthly rents to the plaintiff. This Lease was prepared by defendants and concerned real property located in this District. At a later date (May 16, 2003), Yum! Brands, Inc. informed plaintiff that it was participating in the lease as the property manager and in charge of "lease accounting". On March 31, 2004, defendants notified plaintiff that they were "suspending" the monthly rental payments due to the plaintiff. Defendants paid only $50,000 towards the accrued rents leaving a balance due to plaintiff. Defendants made no other rental payments and, on September 3, 2004, plaintiff obtained a state court judgment of possession (only) with a reservation of rights to recover money damages. On December 9, 2004 plaintiff sold the Property. At that time, defendants had already removed a free standing commercial garage (the commercial structure) from the Property and had not erected the free standing restaurant. As a result, plaintiff sold the Property in a distressed condition.

3. Defendants have improperly contended to the plaintiff that despite the clear terms and conditions of the "lease", defendants still had the "right" to suspend or terminate their commitment to make monthly rental payments. Over the term of the Lease, the amount of these monthly rental payments totals $1,392,300.00 (where only $50,000 in monthly rental payments were made by the defendants).

4. After the lease was signed, and during the time for defendants to apply for municipal permits in connection with or relating to the real Property, defendants received permission from New York City to make or effect the sewer

and utility connections. Despite receiving the "permission", defendants decided not to make these connections and to use the failure to make the connections as "reasons" to suspend Lease payments and to attempt to invalidate the Lease.

5. As a result of defendants' refusal to comply with the terms of the Lease, their removal of the free standing commercial building on the Property, and their failure to erect the improvement (the free standing restaurant), the plaintiff received less than fair market value for the Property on the December 4, 2004 sale. Defendants are responsible for the greater of the difference between the Property as sold and as improved (with a current lease in place) and the amount of the lease rental payments not made by defendants. Plaintiff begs leave of the Court to plead and to prove the amounts of damages sustained upon the trial of this action.

## Jurisdiction and Venue

6. This Court has jurisdiction over the acts and conduct of the defendants pursuant to 28 USC §1332 (diversity of citizenship) where the amount in controversy exceeds $75,000.00.

7. Venue is proper in this District pursuant to 28 USC §1391 (a) (2) because a substantial part of the events, etc., giving rise to the claim occurred in this District.

## The Parties

8. At all times relevant herein, plaintiff was and still is a domestic limited liability company organized under and by virtue of the laws of the State of New York, having its offices located in the Southern District of New York (in Bronx, NY).

9. At all times relevant herein, plaintiff was the owner in fee title of realty described as 3203 Peartree Avenue, Bronx, NY and described as Block 5141, Lot 438 (referred to herein as the "Property"). On December 9, 2004, plaintiff conveyed fee title to the Property to a new owner. The "sale price" of the Property was $863,000 in its then present condition (without the structure and in distressed condition due to the actions by the defendants). This sale price represented a depressed price which was up to $460,000 less than "fair market value" for the Property. This represents an actual loss or injury sustained by plaintiff due entirely to the acts, sufferances and neglect of the defendants.

10. At all times relevant herein and upon information and belief, defendant KFC OF AMERICA, INC. ("KFC of America") was and still is a California corporation with its offices in Irvine California.

11. At all times relevant herein and upon information and belief, KFC of America, was and still is, a wholly owned subsidiary of defendant YUM! BRANDS, INC. ("Yum! Brands"). On or about May 16, 2002, Tricon Global Restaurants, Inc. changed its corporate name to Yum! Brands, Inc.

12. At all times relevant herein and upon information and belief, Yum! Brands was and still is, a corporation with offices in Louisville, Kentucky.

13. At all times relevant herein and upon information and belief, KFC U.S. PROPERTIES, INC. ("KFC US") was and still is a Delaware corporation.

### AS AND FOR A FIRST CLAIM FOR RELIEF
**(Diversity jurisdiction - state law - contract breach)**

14. Plaintiff repeats and realleges all of the allegations set out above as if fully set forth herein.

15. On or about December 15, 2000, plaintiff entered into a Lease agreement ("Ground Lease") with defendant KFC of America for the Property. Under the terms of this Lease :

    (a) The address for the payment of rent is The Bronx, NY;

    (b) The address for notices after the "Rent Commencement Date" is that for Tricon Global Restaurants, Inc. (whose corporate name has since been changed to defendant Yum! Brands);

    (c) The rent for the Property is agreed to be $60,000 yearly for years one through 5, $66,000 yearly for years six through ten, $72,600 yearly for years eleven through fifteen and $79,860 yearly for years sixteen through twenty. The total value (total amounts of rent payments) for the entire lease is $1,392.300 ($300,000 for the first five years, $330,000 for the second five years, $363,000 for the third five years and $399,300 for the final five years).

16. On March 28, 2002, plaintiff and KFC of America signed a "Lease Modification and Reformation Agreement" which changed the lease Effective Date to March 28, 2002 (to allow defendants to exercise their due diligence and inspections while they occupied the Property), where the "Effective Date" is a term of art used in the Lease which was prepared by defendants. Plaintiff incorporates herein, by reference, the Lease and the Lease Modification and Reformation Agreement. Any ambiguities in the language or terms of the Lease must, as a matter of state (New York) law (where the Lease was executed) be interpreted and construed against the defendants (who prepared the Lease) and their individual and separate interests.

17. According to the Lease, the defendants (referred to as the "tenant") were responsible to apply for and obtain all permits (which included all building permits) before the expiration of the "Permitting Period". Only during that "Permitting Period" could the defendants elect to cancel the Lease.

18. The "Permitting Period" of 270 calendar days commenced on the lease's effective date. Defendants set the Effective Date as March 28, 2002. The 270 calendar day period (of the "Permitting Period") expired on December 12, 2002. In that period of time, defendants applied for and received "permission" from New York City agencies to make and effect connections to the sewer line and for utilities. As is alleged below, defendants decided not to make the connections to the sewer line and for utilities and to, instead, falsely claim that they never received such "permission" as a premise or excuse for defendants to attempt to invalidate the Lease.-*

19. Before defendants breached the Lease, the parties (plaintiff, KFC of America and Yum! Brands and by letter from Yum! Brands to plaintiff dated May 16, 2003) agreed to set the Rent Commencement date and Lease Commencement date to April 22, 2003 and to set the Lease Expiration date as April 21, 2023. In this letter, Yum! Brands informed plaintiff that it was responsible for property management and "lease accounting". This letter (incorporated by reference) constitutes an adoption (by Yum! Brands) of all of the responsibilities of the tenant under the Lease for the Property. In addition, this letter refers to the tenant as "KFC U.S. Properties, Inc." and identifies it as a Delaware corporation. Upon information and belief, KFC US is a wholly owned subsidiary of Yum! Brands. As a result of this letter, the tenant's responsibilities under the Lease belong to KFC of America (the original named tenant), Yum! Brands (the owner of KFC of America) and KFC US.

20. Defendants have acted as one entity in their business dealings with the plaintiff where KFC of America and KFC US are wholly owned subsidiaries of Yum! Brands. Defendants never declared one entity to be solely responsible for the Lease and its terms and conditions and, instead, at various times identified any one or more defendants as the leasing party for the Property.

21. Defendants took occupancy of the Property and made Lease (rent) payments to plaintiff from April, 22, 2003 through February 29, 2004.

22. Defendants, in the period of their possession and occupancy of the Property, demolished the existing structure that was on the Property and, upon information and belief, began the improvements to the Property to erect the free standing KFC restaurant. Defendants also made application for and obtained permits for their use and development of the Property (as is elsewhere described herein).

23. Defendants (by a letter dated March 31, 2004 from their attorney, Ronald S. Pordy, Esq.) notified plaintiff that they were suspending rent payments. In this letter, defendants cited Paragraph "8" of the Lease (ie., the "KFC Ground Lease" that defendants prepared) which requires plaintiff only to provide title and access to the Property. This was only an attempt, by defendants, to justify their termination of the Lease and their breach. Plaintiff never agreed to or accepted defendants' decision to "suspend" the payments under the Lease for the Property and never accepted the citation to the Lease as empowering defendants to cancel or suspend the Lease. While defendants had full and ample opportunity to examine the Property and determine feasibility and costs associated with sewer connections needed for a stand alone restaurant and for any other utility connection/service or permit issue, defendants attempted to shift the responsibility for obtaining all permits for sewer connections to the plaintiff. Defendants did not ascertain or determine the means and methods necessary to connect the restaurant to the New York City municipal sewer lines in the period of time provided for in the Lease. Paragraph "8" of this "KFC Ground Lease" does not provide for any such shift of the burdens or obligations from the tenant to the landlord in this manner.

24. At no time prior to December 12, 2002 (270 calendar days from the "Effective Date of the lease" or the "Permitting Period") did defendants elect to

cancel or terminate the Lease under the provisions of the Lease for this purpose. Thus, defendants did not elect to cancel the Lease in the "Permitting Period", which was their only opportunity to do so. Thus, the Lease was never properly cancelled or terminated.

25. By letter dated April 5, 2004, plaintiff notified defendants of their failure to make rental payments for the months of March and April, 2004 ($5,000 for each month for a total of $10,000) and their default and breach of the Lease.

26. Defendants have not made any further rental payments for the Property, despite their obligation to do so. Defendants continued in breach of the Lease.

27. The defendants' attempt to cancel the Lease represented a breach of lease and a breach of contract, as did their subsequent failure to make the monthly rental payments. Defendants were solely at fault for failing to take appropriate steps or measures to investigate any sewer connections during the "Permitting Period" or to timely notify plaintiff that they could not obtain the sewer connection permit.  Upon information and belief, defendants had all necessary permits (and either had all permissions or had the ability to obtain all permissions) and they elected to proceed on the Lease to develop the Property. At no time has the plaintiff failed to correct "title and access objections" from (as Paragraph "8" specifies) fee owners or from mortgage or lien holder claims or to obtain consents from parties with an interest in the Property. Paragraph "8" was inapplicable to the actions of the defendants in their breach of the Lease.

28. As a result of the foregoing, defendants owe to the plaintiff in "lease payments" the amount payable under the Lease which totals $1,392,300 (the total of the rent payments specified in the Lease) minus $50,000 (the total of the rent payments actually made by defendants) for a net amount of $1,342,300. That amount is pro-rated for the period of February 29, 2004 (the last date for

which rent was paid by defendants) to December 9, 2004 (the date plaintiff sold the Property when forced to sell at a reduced price). The pro-rated amount is $50,000 (ten months at $5,000 per month). Plaintiff has demanded payment of this amount by defendants and defendants have refused to make payment of the same. This amount ($50,000) is in addition to the other damages plaintiff has sustained due to the physical damage to the Property (caused by defendants).

29.     By reason of the foregoing, plaintiff has sustained damages of at least $50,000 (towards the total due under the Lease of $1,342,300) or such other measure of damages as the Court may find in the premises

### AS AND FOR A SECOND CLAIM FOR RELIEF
### (Diversity jurisdiction - state common law - contract breach)

30.     Plaintiff repeats and realleges all of the allegations set out above as if fully set forth herein.

31.     In removing the standing structure on the Property, defendants caused plaintiff injury for the loss of value generally and for the loss of the fair market value of the Property. Where, after defendants defaulted on the Lease, plaintiff sold the Property for $863,000, the fair market value of the Property was actually $1,325,000 (the fair market value of the land and the improvement that was on the land when the Lease was signed). The difference in "value" is $462,000.

32.     The market value of the Property as improved with a free standing KFC restaurant under the terms of the Lease (with monthly rental payments of $5,000 and escalating to higher amounts) (at least $1,325,000) was higher than the value of the Property when sold by plaintiffs in December, 2004 ($863,000).

33.     This lower value (the sale price) was caused solely by the defendants' failure to perform under the terms of the Lease, the removal of the

standing structure, their subsequent Lease default and the condition of the Property at their departure.

36. By reason of the defendants' default, plaintiff incurred damages of $462,000 or such other measure of damages as the Court may find upon the trial hereof in the premises.

### AS AND FOR A THIRD CLAIM FOR RELIEF
(Diversity jurisdiction - state common law – tortious damages)

35. Plaintiff repeats and realleges all of the allegations set out above as if fully set forth herein.

36. In removing the existing structure on the Property and in the failure to make improvements as provided for in the Lease and in departing the Property and leaving it in the condition (of being under repair or in the midst of construction and improvement), defendants caused damage to the plaintiff for the diminished value to the Property. That damage was caused by defendants through their acts, tolerances, neglect or sufferances.

37. By reason of the foregoing, plaintiff has sustained damages of $462,000 or such other measure of damages as the Court may find upon the trial hereof in the premises.

WHEREFORE, plaintiff demands judgment against the defendants and each of them on the claims set forth herein and for the costs and disbursements of this action and for such other and further relief as may be just and proper in the premises.

Dated: April 24, 2007

        Yours, etc.

        _____
        LAWRENCE B. GOLDBERG, ESQ.
        Attorney for plaintiff
        220 Fifth Avenue
        Thirteenth Floor
        New York, NY 10001
        212-252-8300